# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GARRETT CAPLAN, <br> Plaintiff, <br><br> v. <br><br> PREMIUM RECEIVABLES LLC, <br> Defendant. | ) <br> ) <br> ) <br> ) 2:15-cv-474 <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM OPINION

Now pending before the Court is the MOTION FOR DEFAULT JUDGMENT filed by Plaintiff, Garrett Caplan, along with a brief in support. ECF Nos. 8-9. Plaintiff has also filed the following documents in support of his motion: the declaration of one of his attorneys, Christian M. Rieger, Esq. (ECF No. 8-2), his own declaration (ECF No. 8-3), and his attorneys' time entries and fee statement (ECF No. 8-4 R).

**I.    Background**

This action arises out of Defendant Premium Receivables LLC's alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* Plaintiff filed his Complaint on April 7, 2015, alleging that Defendant's alleged conduct violated various provisions of the FDCPA: § 1692b(1), § 1692b(2), § 1692c(b), § 1692d, § 1692d(5), § 1692d(6), § 1692e, § 1692e(3), § 1692e(5), § 1692e(10), § 1692e(11), § 1692e(14), § 1692f, and § 1692g. The docket indicates that Defendant was served with a summons and copy of the Complaint on April 17, 2015. ECF No. 5. Defendant was allowed until May 8, 2015, to file a responsive pleading. None has been filed. Accordingly, on May 28, 2015, Plaintiff requested that the Clerk enter default based on Defendant's failure to answer, plead, or otherwise defend itself in this action. ECF No. 6. Default was entered the next day. ECF No. 7. On July 23, 2015, Plaintiff filed this motion, in which he seeks the entry of default judgment against Defendant.

1

## II. Legal Standard

"[T]he entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984). Upon the Clerk's entry of default, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." C*omdyne I, Inc. v. Corbin*, 980 F.2d 1142, 1149 (3d Cir.1990) (quoting 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure, § 2688 at 444 (2d ed.1983)). However, "the Court need not accept the moving party's legal conclusions[.]" *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (citations omitted). Thus, "before entering a default judgment the Court must decide whether 'the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'" *Ford v. Consigned Debts & Collections, Inc.*, No. 09–3102, 2010 WL 5392643, at *2 (D.N.J. Dec. 21, 2010) (quoting *Chanel v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008)).

## III. Discussion

To begin, the Court must determine whether the well-pleaded facts (as opposed to legal conclusions) in the Complaint state a cause of action against Defendant. Having thoroughly reviewed the Complaint, the relevant statutory provisions, and the applicable case law interpreting same, the Court is skeptical of whether several of the statutory sections upon which Plaintiff relies have actually been violated.

Specifically, the Court does not believe that the restrictions on third-party communications, 15 U.S.C. §§ 1692b(1)-(2) and 1692c(b), were violated. *See* Counts I – III. Nor does the Court find that 15 U.S.C. § 1692d (or the cited provisions thereunder) was violated by Defendant's conduct. *See* Counts IV – VI. Specifically, the number of calls – three calls to Plaintiff (two of which went unanswered, though Defendant did leave voicemails); one call to

Plaintiff's brother-in-law; seven *unprompted* calls to Plaintiff's mother; one call to Plaintiff's mother returning her own call; and one call to Plaintiff's mother – is too low to state a claim under § 1692d(5). *See generally Zortman v. J.C. Christensen & Associates, Inc.*, 870 F. Supp. 2d 694, 707 (D. Minn. 2012) ("A remarkable volume of telephone calls is permissible under FDCPA jurisprudence."). Moreover, although Plaintiff claims that § 1692d(6) was violated because Defendant identified itself as "Platinum Holdings" to his mother, "[t]here is substantial authority that the [§ 1692d(6)'s] 'meaningful disclosure' requirement is limited to calls to the debtor." *Lynn v. Monarch Recovery Mgmt.*, Inc., No. CIV. WDQ-11-2824, 2013 WL 1247815, at *11 (D. Md. Mar. 25, 2013) (citations omitted). Likewise, there are no facts in the Complaint to support a claim under § 1692e(3), which prohibits a debt collector from falsely representing or implying "that any individual is an attorney or that any communication is from an attorney." Finally, on the facts alleged, the Court cannot find a violation of § 1692e(14). "[T]he cases in which a violation of § 1692e(14) have been found typically involve a debt collector misrepresenting its identity, such as by purporting to be the creditor when it is not, purporting to be a government agency when it is not, or purporting to be distinct from the creditor when it is not." *Mahan v. Retrieval-Masters Credit Bureau, Inc.*, 777 F. Supp. 2d 1293, 1300 (S.D. Ala. 2011) (citations omitted). But this section permits a debt collector to use any "name under which it usually transacts business" – i.e., a "trade name, licensed or otherwise." *Id.* Here, there is nothing to suggest that "Platinum Holdings" isn't a valid trade name. Furthermore, it strains logic to believe that Plaintiff's mother could have been deceived or mislead about who was calling her, inasmuch as she had initiated the contact with Defendant; Defendant was just returning her call when the reference to "Platinum Holdings" was made.

Nevertheless, the facts alleged do appear to state a valid cause of action under §

1692e(5), which prohibits a debt collector from making empty threats to take legal action, inasmuch as Defendant threatened to file a lawsuit against Plaintiff and, to date, has not actually done so. That same conduct supports a violation of § 1692e(10), which bars the "use of any false representation or deceptive means to collect or attempt to collect any debt." Additionally, since, according to the Complaint, Defendant failed to disclose in its initial communication with Plaintiff that it was "attempting to collect a debt and that any information obtained w[ould] be used for that purpose," Plaintiff has stated a cognizable claim under § 1692e(11).[1] So, too, has Plaintiff established a violation of § 1692g, since Defendant failed to validate the debt in writing within five days of the initial communication with Plaintiff.

Because there has been at least one violation of the FDCPA, the Court must address Plaintiff's claim for damages. Under the FDCPA,

> any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—
>
> (1) any actual damage sustained by such person as a result of such failure;
>
> (2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000 . . . ;
>
> (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

15 U.S.C. § 1692k. Plaintiff seeks $1,000 in actual damages for "humiliation, embarrassment, stress, aggravation, emotional distress, and mental anguish," $1,000 in statutory damages, $2,632.50 in attorneys' fees, and $473 in court and other related costs.

---

1. The Court notes that "Plaintiff does not allege unfair or unconscionable conduct that is not already addressed by his § 1692e claims, and thus his § 1692f claims [in Count XIII] are redundant." *Feuerstack v. Weiner*, No. CIV. 12-04253 SRC, 2014 WL 3619675, at *7 (D.N.J. July 22, 2014).

### A. Actual Damages

"Damages for emotional distress are recoverable under the FDCPA." *Walton v. Pereira*, 995 F. Supp. 2d 437, 441 (W.D. Pa. 2014). Be that as it may, where, as here, a claim for emotional distress is only supported by an affidavit, that affidavit "should be more than conclusory or boilerplate statements." *Manopla*, 2014 WL 793555, at *7. Otherwise, at most, *de minimis* actual damages are recoverable. *Id.* Plaintiff's affidavit contains nothing more than boilerplate allegations of emotional distress. Indeed, in one of the paragraphs, the declaration misidentifies the debt collector as "ACM," instead of Premium Receivables. This is not sufficient to establish Plaintiff's entitlement to recover damages. Nor are the facts and circumstances alleged in the Complaint the type that would support a large award of actual damages for emotional distress. *See id.* (explaining that "even in cases where a plaintiff has suffered permanent personal and professional damages, the damages awards are relatively small") (internal citation and quotation marks omitted). No doubt, the interaction with Defendant was annoying, but Plaintiff himself only fielded one of the calls and, in total, there were a relatively few communications from Defendant occurring over a relatively short period of time, several of which were actually instigated by Plaintiff's mother. Thus, the Court will decline to award any actual damages to Plaintiff.

### B. Statutory Damages

Whether statutory damages should be awarded is left to the court's discretion. *Id.* (citations omitted). In exercising its discretion, the court should consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k. The full amount of statutory damages ($1,000) is usually only awarded in the most egregious of cases. *Manopla*,

2014 WL 793555, at *6. "When, however, the violation is shown to be technical in nature and infrequent, courts have exercised their discretion to deny or reduce statutory damages." *Id.*

This case falls into the latter category. The maximum statutory penalty sought by Plaintiff is definitely not warranted. As already noted, the calls were not especially frequent and, in fact, Plaintiff's contacts with Defendant were limited to just three calls (two of which he didn't answer). Nor was the conduct especially egregious. The gist of the non-compliance was that Defendant threatened to sue Plaintiff, and this threat wasn't even made to Plaintiff, himself. This conduct is "not nearly as reprehensible as much of the prohibited conduct set forth in the statute, which ranges from threatening to arrest the debtor to accusing her of committing a crime." *Sweetland v. Stevens & James, Inc.*, 563 F. Supp. 2d 300, 305 (D. Me. 2008). Accordingly, the Court will award Plaintiff $250 in statutory damages.

### C. Attorneys' Fees and Costs

As the Third Circuit Court of Appeals has recognized, unless there are unusual circumstances, "attorney's fees should not be construed as a special or discretionary remedy" under the FDCPA; "rather, the Act mandates an award of attorney's fees" to the prevailing party in every case. *Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991). "Indeed, several courts have required an award of attorney's fees even where violations were so minimal that statutory damages were not warranted." *Id.* (citations omitted).

"[T]he determination of a reasonable attorney fee" is governed "by the traditional lodestar method[.]" *Jackson v. Allied Interstate*, LLC, No. 2:12CV1144, 2013 WL 3990875, at *4 (W.D. Pa. Aug. 5, 2013). This familiar method "entails multiplying the total number of hours reasonably expended by a reasonable hourly rate." *Bilazzo v. Portfolio Recovery Associates*, LLC, 876 F. Supp. 2d 452, 458 (D.N.J. 2012) (citations omitted). "The burden of establishing the

6

reasonableness of a fee request falls on the plaintiff's counsel." *Jackson*, 2013 WL 3990875, at *3. To satisfy this burden, the plaintiff's counsel "is initially required to submit evidence supporting the hours worked and the rates claimed." *Bilazzo*, F. Supp. 2d at 458. "Additionally, although the lodestar is presumed to yield a reasonable fee, district courts retain discretion to adjust the lodestar." *Id.* (citation omitted).

Plaintiff seeks to recover $2,632.50 in attorneys' fees, broken down as follows:

(1) David Levin, Esq., who is described as a "Non-PA Partner" – 1.3 hours at $425 per hour, totaling $552.50;

(2) Christian Rieger, Esq., who is described as a "PA Partner" – 1.1 hours at $425 per hour, totaling $467.50;

(3) Paul Daniels, Esq., who is described as a "PA Partner" – 0.5 hours at $425 per hour, totaling $212.50;

(4) Jocelyn Hsiao, Esq., who is described as a "Non-PA Associate" – 3.9 hours at $250 per hour, totaling $975.00;

(5) Megan Feddor, paralegal – 0.7 hours at $125 per hour, totaling $87.50;

(6) Amy Catena, paralegal – 1.0 hours at $125 per hour, totaling $125;

(7) Aquanda Thomas, paralegal – 0.2 hours at $125 per hour, totaling $25;

(8) Sarah Heinz, law clerk – 0.3 hours at $125 per hour, totaling $37.50; and

(9) Katie Jezierny, legal assistant – 1.2 hours at $125 per hour, totaling $150.

ECF No. 8-4, at 2. Plaintiff also seeks to recover $400.00 in court costs, which, according to Plaintiff, constitutes the $400 filing fee paid by counsel on Plaintiff's behalf. In addition, Plaintiff seeks $73 to cover process server fees.

Before addressing whether the fees sought by Plaintiff's counsel are reasonable, the Court must address another issue that has come to mind. In particular, while reviewing the time entries submitted by Plaintiff's counsel, it came to light that the bulk of the work performed on

7

Plaintiff's behalf was done by out-of-state attorneys – Ms. Hsiao and Mr. Levin of the Chicago-based firm, Upright Law, LLC – who are not admitted to practice in the Western District of Pennsylvania generally and did not seek to appear in this action *pro hac vice*.[2] This raises the question: Can Plaintiff recover fees for work performed by Ms. Hsiao and Mr. Levin, even though they have not been admitted to practice in this Court?

In assessing this issue, courts have drawn a distinction between when an out-of-state attorney acts in a "consulting" role and when he or she "appears," "actively participates," or "practices" in the matter. When doing the former, the attorney need not seek *pro hac vice* admission and can, without question, recover fees for services performed. *See, e.g.*, *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 823 (9th Cir. 2009) (permitting plaintiff to recover fees for work performed by out-of-state attorney "because his conduct did not rise to the level of 'appearing' before the district court"). When doing the latter, *pro hac vice* admission is required, and the failure to seek such admission can result in a denial of fees. As Senior District Judge Eduardo C. Robreno of the Eastern District of Pennsylvania recently explained,

> From the various decisions considering whether an out-of-state attorney occupied the sort of "consulting" role that would allow for an award of attorney's fees despite the attorney's failure to seek pro hace vice admission in the local court, a consistent list of relevant factors emerges . . . . Where an out-of-state attorney's participation was limited to that of a consultant whose services are compensable despite lack of *pro hac vice* admission, that attorney likely:
> (1) refrained from direct client contact,
> (2) refrained from contact with opposing counsel,
> (3) did not sign or draft substantial portions of pleadings, especially the complaint,
> (4) restricted his participation in the case to reviewing motions, drafting internal memos, and advising lead counsel, such that his work was supervised by, and ultimately "filtered" through the lead attorney,
> (5) recorded only a modest number of hours on a case, relative to lead counsel and other admitted attorneys working on a case.

---

2. Ms. Hsiao and Mr. Levin are both licensed to practice in Illinois.

*Gsell v. Rubin & Yates, LLC*, 41 F. Supp. 3d 443, 450 (E.D. Pa. 2014) (citations omitted). *See also Bilazzo*, 876 F. Supp. 2d at 464 (identifying similar factors).

Applied here, Ms. Hsiao appears to have been the only attorney who contacted Plaintiff, so the first factor weighs in favor of finding that she was not merely a "consulting" attorney. The second factor is not applicable here because Defendant failed to appear. With respect to the third factor, Ms. Hsiao and Mr. Levin appear to have been primarily responble for drafting the Complaint, even though it was signed by Mr. Daniels and Mr. Rieger. Thus, this factor also weighs against finding that Ms. Hsiao and Mr. Levin were just "consulting" with Mr. Daniels and Mr. Rieger. As to the fourth factor, the work of Ms. Hsiao and Mr. Levin went far beyond simply reviewing motions, drafting memos, and advising "lead" counsel. If anything, it was the other way around. That is especially true for Ms. Hsiao, who did the bulk of the leg work on this case, speaking with Plaintiff and his mother and drafting the complaint. Meanwhile, up until the time the motion for default judgment was filed, Mr. Levin was "the apparent pilot guiding the course of the litigation." *Gsell*, 41 F. Supp. 3d at 451. Lastly, Ms. Hsiao and Mr. Levin worked a total 5.2 hours on this case, while Mr. Levin and Mr. Rieger worked just 1.6 hours combined. One would expect those numbers to be reversed if the Chicago attorneys were really just performing "consulting" roles. In sum, under the present circumstances, the Court finds that Ms. Hsiao and Mr. Levin appeared in this case and engaged in the practice of law before this Court. Accordingly, they were required to seek and obtain *pro hac vice* admission under LCvR 83.2(B).

Since they failed to do so, the Court will decline to award Plaintiff fees for any work they performed on his behalf. The 5.2 hours of work they performed will therefore be excluded from the lodestar calculation. *See also Martz v. PNC Bank, N.A.*, Civ. No. 06–1075, 2008 WL 1994858 at *4 n.19 (W.D. Pa. May 5, 2008) (denying part of fee award for work performed by

out-of-state attorneys who failed to seek *pro hac vice* admission). Additionally, the work performed by the legal support staff in this case appears to have been done under the supervision of Ms. Hsiao and Mr. Levin. Thus, fees for services they performed will also be disallowed. *See Gsell*, 41 F. Supp. 3d at 452 n.10.

Now the Court must assess whether the rate sought for Mr. Daniels and Mr. Rieger ($425 per hour) is reasonable. The benchmark of reasonableness "is the prevailing rate for comparable legal services in the forum of litigation." *Bilazzo*, 876 F. Supp. 2d at 469-70 (citing *Interfaith Cmty. Org.* v. *Honeywell Int'l, Inc.*, 426 F.3d 694, 705 (3d Cir. 2005)). "Plaintiff bears the burden 'of producing sufficient evidence of what constitutes a reasonable market rate for the essential character and complexity of the legal services rendered in order to make out a *prima facie* case.'" *Id.* (quoting *Smith v. Philadelphia Hous. Auth.*, 107 F.3d 223, 225 (3d Cir. 1997)). Here, the *only* documentation offered by Plaintiff in support of his claim for attorneys' fees is the declaration of Mr. Rieger. According to Mr. Rieger's declaration, he was admitted to practice law in Pennsylvania in 2009, is admitted to practice before this Court and the United States Bankruptcy Court for the Western District of Pennsylvania, and is a member of the Allegheny County Bar Association ("ACBA"). Meanwhile, the declaration states that Mr. Daniels has over 35 years of experience, is admitted to practice before this Court, and is also a member of the ACBA. This information – or lack of information, really – is woefully inadequate to substantiate the reasonableness of the rate sought. An hourly rate of $300 is much more reasonable "and in line with the prevailing market rates in the Pittsburgh market." *Jackson*, Jackson v. Allied Interstate, LLC, No. 2:12CV1144, 2013 WL 3990875, at *9 (W.D. Pa. Aug. 5, 2013) (finding that $300 hourly rate for FDCPA case was reasonable). Thus, that is the rate the Court will apply in the lodestar calculation.

In sum, the following amounts will be awarded:

(1) Mr. Daniels – 0.5 hours at $300.00 per hour, totaling $150; and

(2) Mr. Rieger – 1.1 hours at $300.00 per hour, totaling $330.

This results in a total of $480 for attorneys' fees. Costs in the amount of $473 will also be awarded.

## IV.    Conclusion

In accordance with the foregoing, default judgment will be entered in favor of Plaintiff based on Defendant's violations of the FDCPA. The Court will award Plaintiff $250 in statutory damages, $480 in attorneys' fees, and $473 in costs, for a total of $1,203. An appropriate order follows.

McVerry, S.J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GARRETT CAPLAN,
       Plaintiff,

v.

PREMIUM RECEIVABLES LLC,
       Defendant.

)
)
)
)
) 2:15-cv-474
)
)
)
)

## ORDER OF COURT AND JUDGMENT

**AND NOW**, this 29th day of July, 2015, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (ECF No. 8) is **GRANTED**. Judgment is hereby entered in favor of Plaintiff, Garret Caplan, and against Defendant, Premium Receivables LLC, pursuant to Fed. R. Civ. P. 55(b)(2). The Court awards Plaintiff $250 in statutory damages, $480 in attorneys' fees, and $473 in costs, for a total of $1,203. Furthermore, the Clerk shall docket this case **CLOSED**.

                                                                                      BY THE COURT:

                                                                                      s/Terrence F. McVerry
                                                                                      Senior United States District Judge

cc:       **Christian M. Rieger, Esq.**
           Email: chris@pauldanielslaw.com
           **Paul M. Daniels, Esq.**
           Email: paul@pauldanielslaw.com